STOULIG, Judge.
Plaintiff, David Robinson, brought this action for unpaid wages for the period from January 1, 1970 through November 4, 1970, allegedly due under a contract of employment for services rendered as manager of the defendant credit union, Central City Federal Credit Union. The trial court dismissed plaintiff’s suit on findings that he failed to establish a contract of employment existed; that plaintiff’s efforts on behalf of the defendant during this period were on a volunteer basis made in anticipation of becoming a compensated manager in the future, and/or being paid for the services in the event funds became available for these purposes; and that said funding for this purpose was never obtained during this period.
Plaintiff appealed urging that the trial court erred in these factual findings and, in the alternative, is entitled to reasonable compensation for the value of his services based on quantum meruit.
We affirm the judgment of the trial court.
Appellant was employed by the Board of Directors of the credit union on May 12, 1969. His annual salary of $6,000 and travel expense of 10 cents per mile were to be entirely paid by Total Community Action, Inc. (TCA), a federally funded agency. All of the credit union personnel, including plaintiff, were made aware that the original funding commitment made by TCA in 1966 was for a maximum period of three years, subject to being withdrawn during this period at the discretion of the agency.
On November 28, 1969, TCA notified the defendant that its financial assistance would be discontinued effective as of December 31, 1969 and all salaried employees of the credit union were requested to submit termination personnel requisitions as of that date. Pursuant to this request, on February 5, 1970, plaintiff signed and submitted the requested termination requisi *631 tion, assigning as the reason for his resignation “insufficient funds for position.” Though the effective date stated in the resignation was December 31, 1969, appellant continued to work for the credit union until November 4, 1970, when the defendant notified him that his “volunteer services” were no longer required.
The dispute over whether plaintiff was to be compensated for his services after tendering his resignation to TCA results from a somewhat ambiguous and obfuscatory written statement made by plaintiff in his report to the Board of Directors in October 1969, which reads as follows:
“My understanding is that by December 31, 1969 the Credit Union will have only a part-time bookkeeper. I will remain as manager and give as much volunteer time as possible.”
Plaintiff maintains this statement expresses his intent to remain as manager at his former salary and to volunteer his overtime services without compensation. Defendant contends that the plaintiff was aware of the fact that after December 31, 1969 there would be one paid employee of the credit union (a part-time bookkeeper) and that his statement reflects his intention to work on a volunteer basis contributing as much time as he could give toward insuring the continued existence of the credit union.
If plaintiffs interpretation of his statement is accepted, his situation would remain much the same as it was before the effective date of resignation. Since Robinson was not compensated for overtime prior to TCA’s discontinuance of support, then his declaration to continue this practice on a volunteer basis, i. e. to relinquish a right to compensation he never had, is a meaningless gesture. The only reasonable interpretation or basis for the declaration in the November report is, as the trial judge found, that the services were being rendered in anticipation of being compensated when funds became available and with the expectation of being retained as a compensated manager thereafter. Such funds were not forthcoming until several months after plaintiffs association with the credit union had been terminated.
Plaintiff’s knowledge that the only source of funding for his salary would be terminated on December 31 and thereafter there would be only one part-time employee of the credit union further militates against his contention that the payment of his salary was to continue during the period in dispute.
Unquestionably the Board of Directors considered Robinson’s activities on behalf of the credit union to be on a volunteer basis, for in its letter to plaintiff dated November 4 it stated “* * * that your volunteer services as manager of the Central City Federal Credit Union are no longer required * * V[1] When this letter was written, no demand for unpaid wages had been made upon defendant, nor suit instituted for this purpose, and therefore the phrase “volunteer services” is not suspect of being made in anticipation of litigation.
Plaintiff contends that he remained as manager, anticipating that another funding agency would be found and that he would be paid his accrued salary. We seriously doubt that plaintiff ever anticipated being compensated for his services during the period in question but are firmly convinced he was motivated by the belief that by contributing these services on a voluntary noncompensatory basis it would place him in a preferred position to be retained as manager when money again became available to resume the payment of a salary. Even if plaintiff’s allegation that he was to be paid his accrued salary were accepted *632 as true, by his own admission it would become payable only if funds for this purpose were available. No such funds were forthcoming and none would materialize until the following January 1, 1971.[2] It should be noted that the defendant never paid a salary to the plaintiff at any time and that the compensation he formerly received as manager of the defendant credit union was paid by TCA.
Even if it were assumed that the plaintiff had borne the burden of proving the existence of the contract, he failed to establish with whom he contracted for the payment of his salary. There is no evidence in this record indicating or -tending to prove that either the defendant or any other funding agency ever obligated itself to pay plaintiff for his services during the period in question.
Although not specifically pleaded, plaintiff argues alternatively on appeal that he should be allowed to recover on a quantum meruit basis the value of his services rendered to the credit union during the period in dispute. In view of our finding that plaintiffs services were volunteered as a gratuity, and therefore noncompensatory, no need exists to pass upon the merits of this contention.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by appellant.
Affirmed.

. The action of the Board of Directors in formally terminating plaintiff’s association with the credit union was made on the recommendation of a federal examiner based upon his findings that Mr. Robinson was inept and was not conforming to the federal credit union rules and regulations.

. It developed that the Model Cities program agreed to assist in underwriting the expenses of the defendant credit union, commencing on January 1, 1971, approximately two months after plaintiff’s association had been terminated.